Whitten v. Clarke. We'll bring in Mr. Jones and Mr. Smith. Let's see if we get, there's Mr. Jones. Mr. Jones, will you speak with us? Yes, your honor. Are we ready to proceed? Yeah. Good morning. May it please the court. My name is Peter Jones and I'm here on behalf of the plaintiff appellate, General Whitman. The district court below dismissed Mr. Whitten's shareholder derivative complaint based on his conclusion that Mr. Whitten failed to adequately plead demand futility. We submit the district court erred in reaching this conclusion and ask this court to reverse. I'd like to start with you. Can I ask you a question before you dive into the merits of the why any demand would have been futile? You maintain that our review of the district court's rule 23.1 ruling is de novo, right? Well, your honor, our position is that a de novo review would be the better approach for this court to take. That may well be true. And there's a circuit split on whether or not 23.1 dismissals should be reviewed de novo or should be reviewed for abuse of discretion. But our precedent puts us firmly, I think, in the abuse of discretion camp. And it has always seemed to me that if you're talking about the standard of review in a federal case for the review of a ruling on a federal rule, that's got to be a federal issue. Yes, sir. Yes, sir. How do we shift from abuse of discretion to de novo? Your honor, we acknowledge that this court has a history of applying the abuse of discretion standard. And we acknowledge that the prior panel rule in this circuit limits this panel's ability to switch from a use of this issue may be better. Let me suggest to you that that might not be right. Let me suggest to you that insofar as our review is predicated on an error of law, we have thousands of cases that say an error of law is an abuse of discretion. Correct your honor. And even under that abuse of discretion standard, we review for errors of law de novo. And it is true that we have perfunctorily said in some of our previous decisions that we review this for abuse of discretion, but I've really had a hard time understanding how drilling down that would work other than our review being for errors of law. And we also have case law that says when it's an error of law under an abuse of discretion standard, we review that error of law de novo. Am I missing something? You're not your honor. And that's why we believe whichever standard of review this court applies, the district court's opinion should be reversed because whether it's a de novo review or an abuse of discretion, we believe that the district court improperly applied the legal standard, made a clear error of law, and that should be reviewed de novo as your honor pointed out. I will say as Judge Jordan. I mean, these pleading questions, they're all questions of law, aren't they? That's correct your honor. And that's why yeah, it's just hard for me to conceive in this in this context, what we would be reviewing for that didn't raise raise a legal question. I think you're exactly right, your honor. The question here is whether the allegation Mr. Wheaton's complaint are sufficient as a matter of law. That's the question that's being asked. And and whether it's viewed as a de novo review or an abuse of discretion review. The answer is whether the district court made an error of law here. So while there is a circuit split, and there's a fair number of cases addressing whether it's more appropriate to consider this in breach of discretion, or de novo, in some ways, it's a matter of semantics. We believe that the de novo approach for the reasons that you're pointing out judge prior is the better approach because the question here is let's get to the point of whether there's been an error of law. Yes, your honor. I'm not sure I think there is. I may agree with you about how the standard of review works. I'm not sure. I'm convinced that there's an error of law here. Yes, your honor. Well, I'd like to start with the issue of board knowledge. In its order, the district court address the issue as a predicate element of the insider trading and false and misleading statement claims. Judge may review the allegations of Mr. Witten's complaint and found, and I'm going to use her own words here because I do think it's important. If plaintiff's allegations are true, as the court must assume they are, the fraud at fleet court was so widespread, and there were enough discreet signs of foul play, the board would have been willfully ignorant not to be aware of the fraud. Well, here's the problem I think you run into, and you backed right into. You've agreed that basically all the questions here are questions of law, and even under abuse of discretion standard, we review those de novo. If that's true, then I can look at this as if I'm looking at it the first time, and I don't have to grade her papers. I can say I don't care if that straight line was right or wrong. If I would reach the same decision because I'm reviewing this question of law de novo, you lose. Well, it's a fair point, your honor. We can look at this de novo, and I think even on a de novo review, there is a clear error of law here because if you look at the cases that we've cited, and we've cited to a number, Delaware law rejects this idea that a plaintiff is required to plead some sort of smoking gun evidence of knowledge, and they have inferred- in Delaware is not controlling on us. We have our own rule 23.1 for our own, as a matter under Erie, we have our own pleading standard of particularity, but so for me, the question is now what constitutes futility as a matter of Delaware substantive law. We do have to follow Delaware law on that, but their pleading requirements, it seems to me, don't govern us. Yes, your honor, and I think you made the point. The question here that is controlled by Delaware law is what is required to show demand futility, which if you look at Delaware law, it requires that the outside directors be disinterested or face a substantial likelihood of liability, and the question then becomes whether they are exposed to a potential claim as pled in the complaint. It seems to me you have to show that with respect under Delaware law, substantive law, you have to show that with respect to, in particularity as to, under the federal standard particularity. You have to show that knowledge as to every board member that would comprise a majority of the board, and I'm not sure you've done that. Well, I respectfully disagree, your honor. I think we have to show that as to a majority of the board in order to show demand futility, but if you look at the cases cited, courts have rejected this idea that you have to show board knowledge on behalf of each and every individual member. In fact, several courts, including the Northern District of Georgia in the Home Depot case, have recognized that you can plead generally as to the board or group pleading. In all of those cases, however, there was evidence such that the entire board would have known it. That kind of group pleading is simply not present here with respect to the outside directors, and I'm concerned primarily about Johnson, about Farrelly, Johnson, and Haggerty. Those are three outside directors, and without them, you do not have five, and you have to have five for your majority. Well, your honor, again, I would respectfully disagree, Judge Anderson. I think there are allegations here that go to the notice to the board generally, and the first point is a common sense point. The board knows that these fuel cards are being marketed as, quote, fee-free, no setup fees, account fees, transaction fees. I did not see an allegation that said or gave rise to a reasonable inference that all of those board members, those three, knew that it was being advertised that way. None of these board members had anything to do with the salesmen who, I think, were making those representations. Well, your honor... You can answer. Where are the allegations? That's what I'm looking for. Well, your honor, I think our point is, and this goes to one of the issues that Judge May has, she took each of the pieces or each of the allegations, isolated them, determined they weren't enough to show board knowledge, and then dismissed them and moved on. One of the things that Judge May failed to do was view this complaint holistically, and again, if you look at the complaint as a whole, you see several things that I think, when put together, require a reasonable inference of board knowledge, and again, I'll start with the idea that 76 percent of the revenues of this company were generated by this alleged fraudulent fees. My read of the complaint is that you did allege that 76 percent of the revenues are derived from fees, but you did not allege that 70 percent of the revenue was derived from fraudulent fees. Well, I understand that, your honor, that specific sentence was referenced, 76 percent of revenues were derived from fees, but I think if you look at the allegations, it's consistent with the idea that each of these fees was fraudulent in some nature. Again, these fuel cars were marketed as fee-free, yet the Fleet Corps imposed a host of fees on customers, late fees, high-risk fees, minimum program fees, account fees, convenience fees, and it's not just the types of fees that were imposed, it's how they were imposed. There's allegations about fraudulent billing practices where Fleet Corps imposed these high-risk fees regardless of credit score or payment history. There are allegations that Fleet Corps made it impossible to pay on time by processing online payments or check payments after the due date. The problem with those allegations is that there are no allegations, and frankly, I saw no reasonable inferences from those allegations that these three board members would know about them, would know about what you are talking about. And, your honor, I see my time is expired. May I answer your question? Sure, you can answer that question, and then it's up to the Chief Judge whether you go further. Yes, your honor. Thank you. You can answer Judge Anderson's questions until Judge Anderson is satisfied. I appreciate that, your honor. I think one way to answer this question is to look at the board meeting minutes, and if you look at Judge May's order, what she did is she took the board meeting minutes, and these are the board meeting minutes from July of 2016 and October of 2016, and say, well, they only reference general business information, lowlights, future performance, but if you look at them in context, I think you can see a different meaning. At the July 26, 2016 board meeting, the CFO day reviewed with the board current disclosures and discussed possible changes to those disclosures, but if you consider that in context, it takes on a different view. Shortly before that board meeting, he received an email from an investor, why does the company give so little transparency? Is it because so much comes from late fees? Ryan Day immediately forwarded the email to CEO Clark and says, I'm getting a lot of questions about disclosure. My sense is lack of disclosure is making investors nervous. Lots of noise about it. Two days later, Day emails another employee and says, we may be forced to disclose, which is not good. And on that same day, he liquidates 30% of his fleet core stock. Now, shortly after that is the July board meeting where he used the current disclosures with the entire board and discusses possible changes to that. And for example, when you see those in context, I think those board meeting minutes take on a different light. I'm happy to talk about the October meeting minutes as well, but I'm well over my time. I want to be respectful of the court's fields as questions have been answered. I'm concerned about the October 20, 2016 meeting too. One quick question about it. It's not in the record. It's not in the exhibits. There's an excerpt, one page excerpt in the exhibits. What you say about it in your brief at page three and four is simply not in the record that I can find. Namely, what is not in the record is any discussion of Chevron planning to cease doing business with the company, which it did not cease until December 2016, which actually your allegation says that they ceased business December 2017. But I think it occurred on 2016. But the point is, that's not in the record. That wasn't wasn't even before the district court. You didn't mention it in your seven flags. Yes, your honor. You know, the the October 20, 2016 board meeting, and I want to address your honest question. I don't have the specific citation to the Chevron allegations in the complaint. I will look for that provided my extra time. But I did want to address the October 20, 2016 meeting minutes in which the CEO Clark reviewed four key business relationships and their impact on forward financial performance. Again, it's important to consider that in context, as your honor pointed out, this is less than two months before Chevron, Fleet Corps largest customer publicly announces that it is ceasing to do business with Fleet Corps and transitioning to its competitor, Wex. And subsequently, Chevron files a lawsuit against Fleet Corps, and specifically alleges that Fleet Corps was harvesting harvesting its accounts for fees. Now, when you look at those meeting minutes, and the fact that the CEO is reviewing key business relationships, and their impact on forward financial performance, less than two months before these events, I think, holistically, it becomes clear that these issues were being discussed with the board. Okay, is that Judge Anderson? We got enough? I think that's satisfactory. Thank you, Chief. Do you have anything, Judge Jordan? No, I don't. Thank you very much. All right, Mr. Smith. We let your opponent go over considerably. But we'll see. We'll see how many questions. Good morning, your honors and may it please the court. The court here did not abuse its discretion did not make an error of law in ruling that the allegations of the complaint simply did not were not sufficient to raise a substantial Do you agree with me about how that standard of review works? Well, I think I do in that clearly, errors of law are an abuse of discretion. This court is you know, pleading questions are questions of law. Well, I don't know if I would go that far. For example, of one that's not. Because this is your problem. You say you don't know if you go that far. I want to hear what? Because the court is to take the reasonable inferences that are raised by the allegations of the questions of law. Reasonable I think are questions of law. What in my in my mind, what is a reasonable inference to draw is that's where perhaps in this abuse of discretion review, the court would have some latitude. Well, maybe maybe the court would have latitude about whether to give leave to amend. There would be some discretion in that. Correct. But but but what is a reasonable inference? I mean, that that's a question that comes up on summary judgment, right? Whether the evidence gives rise to a reasonable inference, right? And we know summary judgment is questions of law only. Right. And it also comes up in the 12B6 context as well. Those are clearly questions of law, aren't they? I think so. But we would go back to why does the has the court for so many years said that this is subject to an abuse of discretion? Very good. Very good. Let me offer a potential reason. Unlike in summary judgment, unlike in 12B6, which can sound the death knell of any opportunity for relief to the plaintiff, here we're dealing with a situation where the law is favoring the exhaustion of intracorporate remedies. And if the court finds that there is no reasonable inference, there's no demand futility, it's not the end of the road for the plaintiff. The plaintiff simply must go back and exhaust intracorporate remedies. So perhaps that is one of the questions we have to ask about whether that pleading standard has been met and whether the substantive law about demand futility has been met is all questions of law. Right. And that's all this presents, isn't it? Well, I think that is is correct. And with the one exception of is there latitude for the district court to draw reasonable inferences that might be different from the reasonable inferences that the appellate court would withdraw? I can only speak for myself on that. But you don't have me on that a discretionary call, reasonable inferences. We do deal with that with motions to dismiss summary judgment. And we know those are to know. I would I would agree with you. And the only question I would ask is, then what is the why has the court for so many years said that this is? We need to drill down and make sense of it. But but I would say in the final analysis, it certainly doesn't matter from the standpoint of Fleet Corps and its board. The board, eight of the nine members of the board are outside directors and under either standard, the allegations of the complaint are simply insufficient. The court went through the various red flags that the plaintiff alleged the court looked very hard for what information was brought to the attention of the board here and just couldn't find that there was anything to show that the board was informed of a fraudulent fee scheme. What about that October 20 2016 meeting, which does seem to me to be the most significant evidence that the plaintiff has in this case. And even if even if that is not in the record, which it may or may not be, I couldn't find it. But shortly after that, on December 16, and December 2016, the largest customer did cease doing business. Why would it? Why is there not a reasonable inference that at least as of December 2015, these board members knew that the largest customer was ceasing doing business? Well, a couple of reasons here, your honor. Now I'll look at the October 16 board minutes. First, that's exhibit 27 to the complaint. There's no mention of Chevron in that in those minutes. Nothing. I've looked at that and I know that. And so it just there was discussion of four business relationships and the impact on forward financial performance. So that's point one. Point two, if you look at the allegation of the complaint regarding Chevron, it does not support an inference that Chevron terminated the relationship because of fees and certainly not fraudulent fees. And I'll direct the court to paragraph 123 of the complaint. It said that the complaint was because the Fleet Corps was not cooperating in servicing the accounts at the contractually required levels and for not transferring the accounts to the new provider that Chevron chose, WEX. So there's nothing in the paragraph from that Chevron complaint that's quoted at paragraph 123 that suggests that the relationship is is being terminated because of false or misleading or fraudulent fees. It says they continue to harvest the account for fees while failing to service the accounts at the contractually required levels. These actions are harming Chevron's customer goodwill and will continue to inflict damages to goodwill until the Chevron accounts are transferred to WEX. So for two reasons, there's nothing that raises a reasonable inference that Chevron believed the fees, which it knew to be charged, were fraudulent or that this ever came to the attention of the board. One more thing and actually in your favor in that regard is that with respect to Farrelly and Johnson, there were no challenged inside sales even after the October 2016 meeting. So both Farrelly and Johnson with respect to their challenged inside of sales are unaffected by the October 2016 meeting or the December 2016 cessation of business. One further thing actually in your favor also is when Chevron finally filed suit, I think that was May 1, 2017, they still didn't allege fraud. They were still alleging only the harvesting of fees because of contractual violations. That's correct, Your Honor. So there was nothing in the Chevron suit that even though it came so late, as you point out, even had it been known earlier, even if that suit had been known earlier, there's nothing in the suit that There were other allegations that the court looked at. There were allegations that there were five complaints to the Better Business Bureau. There's nothing that shows that those were brought to the board's attention. There was a lawsuit. What about the dates? Did the allegations show the dates of the complaints? Of the Better Business Bureau complaints? Yes. I don't believe so, but it's in paragraph 98. If you look at that, don't delay your time. No, there was no allegation in there about when those complaints were made. There was an allegation of a lawsuit that was filed by one customer over a $1,000 fee dispute. And there's nothing to suggest that that suit was brought to the attention of the board. So at bottom, the court poured through a very lengthy 125-page complaint, looked very hard for any particular allegations that raised an inference that the board knew about this and simply was unable to conclude that such a reasonable inference was raised. I'll point out that, in addition, this plaintiff was not like the ordinary plaintiff where a complaint had to be pled without access to any information, save what was turned up through the plaintiff's own investigation. Here, the plaintiff had access to over 300,000 pages of documents that were produced in the other litigation. And even with that, was unable to plead anything that showed that these outside directors had knowledge of any fraudulent fees. So if there are no other questions, we ask that the order be affirmed. There's been no abuse of discretion. There's been no error of law by the court in reaching its conclusion. Thank you. Well done, Mr. Smith. Mr. Jones, you've saved three minutes. Yes, your honor. In my short amount of time, I would like to make just a few points. And I appreciate Mr. Smith for pointing out the record site for our reference to Chevron in our complaint. That is paragraph 123. I will respectfully disagree slightly on his interpretation of the outcome. I think paragraph 123 says that they ceased business December 31, 2017, does it not? It doesn't mention the date in this paragraph. And we may have had a typo in our briefing. I think you're correct, your honor, that they ceased business December 31, 2016. And I do not think in your briefing to the district court, you highlighted the significance of the October 20, 2016 meeting, did you? I believe we did discuss our October 20, 2016 meeting as part of a holistic review of the allegations sufficient to support a reasonable inference. It's not in the seven red flags. The only thing in the seven red flags is the filing of suit May 1, 2017. That's correct, your honor. It's not listed as one of the seven red flags. But I do think your correct to focus on it because I do think it shows communications directly to the board when viewed in context that relate to the Chevron issue, but also there are references in the meeting minutes to reviewing environmental factors, including fuel prices, which in context implies heavily that the board was discussing the MPAF fees specifically that relate to situations where fuel prices fall below $3.25. So I do think they are part of the picture that showed that this board was, it is reasonable to infer that this board was knowledgeable about the fee scheme and its impact on customers. I would like to point out that while your honor is correct, the Chevron lawsuit related to between Fleet Corps imposing fees in contravention to its contract with Chevron and actual fraud for the purposes of our lawsuit, it would have the same effect, which the Fleet Corps is breaking its contract with Chevron and improperly imposing fees on its customers in violation of its contract. I see my time is winding down and I went over the first time. I want to be respectful of the court's time. If there are any other questions, I'm happy to address them. I appreciate that. You were all in our time earlier and we're finished for today. We'll be in recess until tomorrow. Thank you, counsel. Thank you, your honor.